## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JANET HUFF,

                **Plaintiff,**                  **CIVIL ACTION NO. 8-CV-13029**

        **vs.**                    **DISTRICT JUDGE DAVID M. LAWSON**

**COMMISSIONER OF**                  **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

                **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**I.**     **RECOMMENDATION:**     This Court recommends that Defendant's Motion for Summary Judgment (docket no. 13) be GRANTED, that Plaintiff's Motion for Summary Judgment (docket no. 10, 16) be DENIED, and the instant complaint DISMISSED as there is substantial evidence on the record that claimant retains the residual functional capacity for a limited range of sedentary work.

*** 

**II.**     **PROCEDURAL BACKGROUND**

      Plaintiff filed an application for disability and Disability Insurance Benefits with a protective filing date of September 10, 2004, alleging that she had been disabled and unable to work since September 6, 2003 due to acute lumbosacral disc disease, levoscoliosis, degenerative disc disease, herniated disc at L4 and L5, bulging disc at L3 and L4 with impingement of the thecal sac and congenital stenosis of the central canal as evidenced by short pedicles.  (TR 17, 77-78).  Plaintiff's initial application was denied.  (TR 38-43).  Following a March 13, 2007 hearing, Administrative Law Judge Lubomyr M. Jachnycky (ALJ) denied Plaintiff's claim in a decision dated April 25,

2007.  (TR 17-26, 186).  The Appeals Council declined to review the ALJ's decision and Plaintiff

commenced the instant action for judicial review. (TR 4-6).  The parties filed Motions for Summary

Judgment and the issue for review is whether Defendant's denial of benefits was supported by

substantial evidence on the record.

**III.    PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY**

      **A.    Plaintiff's Testimony and Reports**

Plaintiff was forty-five years old at the time of the administrative hearing.  (TR 190).

Plaintiff has a GED and past work experience as a stock selector in a warehouse, preparing orders

for shipment. (TR 192, 194).  Plaintiff was laid off in March 2003. (TR 195).  Plaintiff testified that

most of her problems started in September 2003 after she fell off a boat and slammed her back onto

the edge of the boat.  (TR 200).  Plaintiff had physical therapy following the incident.  (TR 202).

Plaintiff testified that she has constant pain in the low back and in the middle of her back and the

entire spine.  (TR 203). Plaintiff described her pain as fluctuating.  (TR 204).  On approximately ten

days of the each month she has pain lasting all day which she rates at a level ten on a scale of ten.

(TR 204).  Plaintiff also testified that she suffers from bilateral carpal tunnel syndrome, which was

first diagnosed in 1989 after she caught her arm in a machine at work.  (TR 205).  Plaintiff testified

that her arms fall asleep when she lays on her sides.  (TR 204).  Plaintiff wears a brace on her right

hand.  (TR 206).  She testified that her hand gets cold, her left leg aches, she has shooting pains in

both legs and numbness in her feet and knee.  (TR 207-08).

Plaintiff testified that she can complete her own hygiene tasks, dress herself and prepare

food.  (TR 196).  She performs household chores including dusting and vacuuming and she takes

care of her cats.  (TR 196). Plaintiff does three to four loads of laundry a week.  (TR 197).  Plaintiff

reads novels or biographies two to four times a week for approximately forty-five minutes at a time. (TR 193).  Plaintiff has a driver's license and drives about twice per month to the store or to visit her mother.  (TR 191).  Plaintiff does only light shopping and her husband does the grocery shopping.  (TR 197).  Plaintiff has a handicapped sticker for her car because her husband would otherwise have to drop her off at the door of her destination.  (TR 192).  Plaintiff testified that she does not use a cane because she has a pinched nerve in her left elbow.  (TR 192).

At the time of the hearing, Plaintiff's medications were Tylenol III, Valium and Flexeril, Excedrin as needed for migraine headaches and Midol or Pamprin as needed for cramps.  (TR 218). Plaintiff testified that she does not have side effects from the medications other than some constipation from the Tylenol III.  (TR 218A).  Plaintiff testified that she can sit for a half-hour before she has pain, she can stand for fifteen to twenty minutes and she used to be able to walk 160 yards. (TR 213).  Plaintiff tries to avoid using stairs and her home is one level.  (TR 215).  She can lift a maximum of ten pounds and she sometimes drops her utensils when she eats.  (TR 214). Plaintiff tries to avoid reaching above her shoulders because it causes her "shoulder to grate [her] joints."  (TR 216).

### B.    Medical and Record Evidence

Plaintiff reported to the emergency room on September 10, 2003 with complaints of back pain as a result of falling over the side of a boat four days prior.  (TR 89-96). X-rays of the lumbosacral spine revealed levoscoliosis of the lumbar spine, degenerative changes at the L3-L4 level and no acute compression fracture.  (TR 94).  A CT scan of the lumbar spine revealed a healing fracture at the right sacral wing, a bulging disc at L3-L4, what "appears to be a herniated disc at the left of midline at L4-5," and "congenital stenosis of the central canal as evidenced by the short

3

pedicles." (TR 94).  At the hospital, Plaintiff was treated by Dr. Donald Beyer and was advised to follow-up with Dr. Goldberger within two days of discharge.  (TR 96).

Plaintiff was evaluated by Devon A. Hoover, M.D., at Eastside Neurosurgery, P.C., on October 3, 2003.  (TR 116).  Dr. Hoover noted that Plaintiff reported pain radiating into both legs, "some numbness and tingling in both legs in the posterolateral lower legs and down into the dorsum of the foot and toes." (TR 116).  Dr. Hoover recommended physical therapy and an MRI.  (TR 116-17).

Plaintiff attended approximately nine of twelve prescribed physical therapy sessions from October to November 2003.  (TR 101-108).  In a November 13, 2003 treatment summary, the physical therapist noted that Plaintiff reported "increased ease of movement and transfers, and that she is able to walk a little faster." (TR 109).  The therapist noted that function "continues to be less than normal" and Plaintiff "reported that she wears the back brace almost constantly."  (TR 109).  The therapist reported that Plaintiff demonstrated an "increased cadence when walking" and "increased ease of transfers," however, movement was still "guarded, slow and rigid," and spasms persisted in the lower thoracic and lumbar spine.  (TR 109).  The therapist noted that Plaintiff had made mild improvement but range of motion, strength and functioning remained less than normal. (TR 109).

Plaintiff underwent an MRI of the lumbar spine on October 22, 2003.  (TR 118).  The MRI showed "degenerative disc disease most marked L2/3, L3/4 with endplate edema at these levels and mild disc space loss.  There is minimal trefoiling of the thecal sac at L3/4 and a posterolateral disc bulge on the left at L4/5.  There is a small central disc herniation at L5/SI causing effacement but no significant deformity of the thecal sac." (TR 118).  Dr. Hoover concluded that the MRI showed "some degenerative changes primarily in the discs at L2-3 and L3-4." (TR 119).  He concluded that

4

Plaintiff "does not have any significant canal or foraminal stenosis" and that Plaintiff had "only mild improvement" with physical therapy." (TR 119). Dr. Hoover stated that he is "not recommending surgical intervention" and he discussed the "importance of continuing to work on core muscle strengthening." (TR 119).

A total body bone scan on September 15, 2004 revealed "mild levoscoliosis of the lumbar spine," and Raulie Rodrigo, M.D., concluded that Plaintiff had "mild increased activity in both shoulders, wrists and knees likely related to degenerative change." (TR 120). X-rays of the cervical spine on September 21, 2004 revealed mild discogenic and degenerative changes at the C5-C6 level. (TR 121).

The record contains Plaintiff's treatment records with Dr. Price from October 11, 2002 through February 27, 2007. (TR 122-29, 157-63). The record shows that Plaintiff complained of back and neck pain and bilateral carpal tunnel syndrome as early as October 2002. (TR 124). Dr. Price prescribed Tylenol with codeine and Valium. (TR 124). Plaintiff continued to regularly complain of neck and back pain. (TR 122-25). On September 12, 2003 Plaintiff complained of "back disc disease" after falling off the boat. (TR 125). Dr. Price continued to prescribe Tylenol with codeine and Valium. (TR 122-29). The record shows that Dr. Price also prescribed Flexeril to aid Plaintiff in sleeping. (TR158). On several occasions Dr. Price referred to Plaintiff's "usual" and/or "chronic" back pain. (TR 122, 124, 126, 129, 157-63). Similarly, on several occasions Dr. Price noted "no new neurological" signs, deficits and/or problems. (TR 122, 124, 125, 127, 128).

On January 31, 2005 state agency medical consultant William G. Thomas, M.D., completed a Physical Residual Functional Capacity Assessment. (TR 130-38). Dr. Thomas concluded that Plaintiff is limited to lifting and/or carrying twenty pounds occasionally and ten pounds frequently, standing and/or walking about six hours and sitting six hours in an eight-hour workday, needs the

ability to alternate between sitting and standing every thirty minutes for one to two minutes, and must avoid constant pushing and/or pulling (including the operation of hand and/or foot controls) with the upper and lower extremities.  (TR 132).  Plaintiff may only occasionally climb ramps and stairs, balance, stoop, kneel, crouch or crawl and can never climb ladders, ropes or scaffolds.  (TR 133).  Plaintiff may perform frequent, but not constant, reaching, handling, fingering and feeling with both hands.  (TR 134).  Plaintiff must avoid exposure to heights.  (TR 135).

Plaintiff was evaluated on March 31, 2005 by Geoffrey K. Seidel, M.D.  (TR 139-45).  Dr. Seidel noted that Plaintiff needed electrodiagnostic testing of both upper and lower extremities, which Plaintiff underwent on April 13, 2005.  (TR 144, 146-47).  Dr. Seidel concluded that Plaintiff has "some residual thermal effects involving the left upper extremity," sensory and motor nerve conduction studies were significantly delayed and Plaintiff had an overall pattern consistent with "a sensory peripheral polyneuropathy primarily axonal type."  (TR 147).  Dr. Seidel also diagnosed "significant medial motor slowing compatible with a superimposed median mononeuropathy with a conduction velocity slowed to 46 M/[second]" and left ulnar neuropathy at the elbow superimposed.  (TR 147).  Dr. Seidel's opinions are set forth in more detail in the analysis below.

### C.    Vocational Expert Testimony

The Vocational Expert (VE) agreed that Plaintiff's past work was as an order selector, apartment maintenance worker, office cleaner and press operator.  (TR 223).  The ALJ asked the VE to consider a forty-five year old individual with a GED and past work experience such as Plaintiff's, suffering from a disorder of the lumbar spine with scoliosis, neck pain, bilateral carpal tunnel syndrome, migraine headaches, a history of right knee joint instability and right hip pain.  The individual takes medications such as those taken by Plaintiff with the only side effect being some constipation.   The individual is limited to lifting and carrying a maximum of ten pounds

6

occasionally, sitting for approximately six hours of an eight-hour day, standing and/or walking two hours of an eight-hour day, needing a sit/stand option after approximately twenty minutes, limited to only occasional bending and stooping, no kneeling crouching or crawling, no climbing steps or stairs, no work involving reaching above shoulder level, and no power gripping or firm grasping with either upper extremity. The individual wears a right hand brace occasionally and is unrestricted in the ability to perform simple grasping and fine manipulation. The individual is further restricted to jobs entailing no more than simple routine work due to side effects from medication including difficulty with concentration, persistence and pace. (TR 223-24).

The VE testified that such an individual could not perform Plaintiff's past work. (TR 224). The VE testified that such an individual could perform entry level, unskilled, sedentary work including simple forms of bench packaging (5,000 jobs in the region defined as the lower half of the state of Michigan), simple forms of visual bench inspector (4,500 jobs in the region), simple forms of bench sorting and inspecting (3,000 jobs in the region), and bench assembly (7,000-8,000 jobs in the region). (TR 225). The VE testified that these job requirements were consistent with the Dictionary of Occupational Titles (DOT). (TR 225).

Next, the ALJ asked the VE to consider an individual who could sit for approximately thirty minutes, stand for fifteen minutes at a time, and sit, stand and walk for less than two hours out of an eight-hour day. The VE testified that such an individual would be "totally precluded from meeting the demands of competitive employment." (TR 226). The VE testified that someone who needed to walk every thirty minutes for a five-minute interval, needed a sit/stand option at will and needed to take unscheduled breaks would be precluded from all competitive employment. (TR 226). The VE also agreed that an individual who needed a thirty-minute unscheduled break every hour would not be able engage in competitive employment. (TR 226).

7

## IV.   ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff had not engaged in substantial gainful activity since September 6, 2003, met the insured status requirements of the Social Security Act until December 31, 2007 and suffered from disorders of the spine with scoliosis, neck pain, bilateral carpal tunnel syndrome, migraine headaches, a history of right knee joint instability, right hip pain and ulnar neuropathy, she did not have an impairment or combination of impairments that meets or medically equals the Listing of Impairments. (TR 19-20). The ALJ found that Plaintiff was not entirely credible and although she is unable to perform her past relevant work, she retains the ability to perform a limited range of sedentary work. (TR 20). The ALJ concluded that there are jobs that exist in a significant number in the national economy that Plaintiff can perform. (TR 24).

## V.   LAW AND ANALYSIS

### A.   Standard Of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

8

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B.    Analysis

#### 1.    *Scope of the Court's Review*

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     she was not presently engaged in substantial gainful employment; and

(2)     she suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     she did not have the residual functional capacity to perform her relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f) (2009). If Plaintiff's impairments prevented her from doing her past work, the Commissioner, at step five, would consider her residual functional capacity ("RFC"), age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. *See id*. § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding

9

"supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

Plaintiff argues that the ALJ failed to properly evaluate her treating physician's opinions, the ALJ's credibility determination is not supported by substantial evidence and the ALJ's RFC is not supported by substantial evidence. (Docket no. 10). Plaintiff asks the Court to reverse the ALJ's decision and remand the claim for calculation and payment of SSI benefits, or, in the alternative, remand the claim for further review of the evidence. (Docket no. 10).

**2.      *Whether Substantial Evidence Supports the ALJ's Findings With Respect to Dr. Seidel's Opinions***

Plaintiff argues that the ALJ rejected Dr. Seidel's opinions on the mistaken conclusion that Dr. Seidel was not a treating physician. Plaintiff argues that the ALJ mistakenly noted that Plaintiff's attorney sent her to see Dr. Seidel in March 2005 for a disability evaluation, when she had merely asked Dr. Seidel to forward her records to her attorney.

It is well settled that the opinions and diagnoses of treating physicians are generally accorded substantial deference. Under 20 C.F.R. § 404.1527(d)(2), the ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. The Sixth Circuit has stated that "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters*, 127 F.3d at 529-30. When deciding what weight to give to any medical opinion, the ALJ will consider the

10

treatment relationship, including the length of the treatment relationship, the frequency of examination, and the nature and extent of the treatment relationship.   *See* 20 C.F.R. § 404.1527(d)(2)(i), (ii).

The ALJ declined to adopt Dr. Seidel's opinion in full.  This is relevant because Dr. Seidel completed a Lumbar Spine Residual Functional Capacity Questionnaire on May 5, 2005 in which he made findings regarding Plaintiff's limitations which the VE testified would preclude competitive employment.  (TR 148-54).  On the May 5, 2005 form, Dr. Seidel diagnosed Plaintiff with chronic cervical and lumbar pain.  (TR 149).  Dr. Seidel opined that Plaintiff can sit for only thirty minutes, stand for fifteen minutes, sit and stand for less than two hours total in an eight-hour work day, needs to walk around for five minutes of every thirty minutes during an eight-hour workday, needs a sit/stand or walk option at will, will need to take an unscheduled thirty minute break at least hourly throughout the work day, must wear a knee brace, can only rarely lift less than ten pounds, can never twist, stoop, bend, crouch, or climb ladders and stairs, and can perform grasping, turning and twisting objects, fine manipulation and reaching overhead with the upper extremities for only five percent of every eight-hour work day.  (TR 149-53).  Dr. Seidel found that Plaintiff would likely be absent from work for more than four days per month as a result of her impairments.  (TR 153).

The ALJ properly considered Dr. Seidel's opinion, cited to it in his decision, and gave specific and concise reasons for failing to give it controlling weight.  The ALJ properly considered the length of treatment and frequency of Plaintiff's treatment by Dr. Seidel.  Substantial evidence supports the ALJ's statement that there "appears to be some question as to whether Dr. Seidel ever established a treating relationship with the claimant."  (TR 23).  The ALJ points out that at the time that Dr. Seidel completed the May 5, 2005 form, he had only seen Plaintiff twice, the first time in March 2005 for evaluation and on the May 5, 2005 date.  The record shows, however, that the two

11

dates on which Dr. Seidel saw Plaintiff prior to May 5 included an electrodiagnostic examination on April 13, 2005, as follow-up testing to the March 2005 evaluation.  (TR 147).  The ALJ's misstatement as to the dates is harmless error.  At the time Dr. Seidel completed the May 5, 2005 form, he had examined Plaintiff only two times prior and one of the visits was for the follow-up EMG examination.

Plaintiff disputes the ALJ's statement that Plaintiff initially saw Dr. Seidel in March 2005 "for a disability evaluation, at the request of her attorney.[1]"  Although the record, including Dr. Seidel's notes, is ambiguous as to who referred Plaintiff to the doctor, the ALJ's finding that Plaintiff sought Dr. Seidel for evaluation is supported by substantial evidence in the record.  Dr. Seidel's March 31, 2004 examination report states that the referral source is a "friend," and the report is addressed to Plaintiff's attorney as well as her personal physician.  (TR 139).  On May 5, 2005 Dr. Seidel stated "I note that my evaluation of Janet Huff is complete" and further stated "I note that she was seeking evaluation only.  She is being managed by another physician."  (TR 148).  On October 6, 2005 Dr. Seidel stated that Plaintiff came to see him "today at the request of her lawyer.  She states that her lawyer wanted her to followup (sic) with me."  (TR 155).  Dr. Seidel noted that Plaintiff and her attorney had "misread the record" because on the April 2005 EMG record "they recommended a followup (sic) and she indeed did come in for the followup (sic) on May 05, 2005 and at that point, she had decided that she did not want to have me manage her care medically."  (TR 155).

On October 6, 2005 Dr. Seidel concluded that Plaintiff has chronic cervical, thoracic and lumbar pain, sensory and motor peripheral polyneuropathy and ulnar neuropathy at the elbow.  (TR

---

[1]Plaintiff testified that she sought treatment and/or evaluation from Dr. Seidel on her own.

12

155).  Dr. Seidel noted that he will followup (sic) in one month," and he is "quite skeptical that she [Plaintiff] will follow up."  (TR 155).  Other than the four dates occurring between March 2005 and October 2005, the record does not show treatment or further examination or evaluation by Dr. Seidel.  Furthermore, Dr. Seidel's own reports provide substantial evidence that Plaintiff was seeing Dr. Seidel for evaluation and had decided that she was not going to seek treatment from Dr. Seidel[2].  There is substantial evidence to support the ALJ's finding that it did not appear that a treating physician relationship was established with Dr. Seidel and the ALJ properly considered the length and frequency of Dr. Seidel's examination of Plaintiff.  (TR 23).  20 C.F.R. 404.1527(d)(2)(i).

The ALJ did not rely on this basis alone to discount Dr. Seidel's opinion.  The ALJ also pointed out the less restrictive findings of other physicians in the record, the objective evidence in the record and the conservative treatment which Plaintiff had undergone.  (TR 22-23).  The ALJ pointed out that Plaintiff had only one trip to the emergency room for back pain, and that was in September 2003, four days after the fall off the boat in which she injured her back.  (TR 22, 89-93).  Plaintiff was treated with physical therapy and pain medication.  On November 14, 2003 Devon A. Hoover, M.D., neurosurgeon, opined that Plaintiff suffered from low back pain that is mechanical in nature, with degenerative changes primarily at L2-3 and L3-4 and no significant canal or foraminal stenosis.  (TR 119).  Dr. Hoover noted that Plaintiff had only mild improvement with physical therapy, but that this "is not anything that is well treated with surgery" and he is "not recommending any surgical intervention."  (TR 119).  Dr. Hoover recommended that Plaintiff continue to work on core muscle strengthening and did not note any restrictions in her activities.

_____

[2]Plaintiff testified that she did not return to see Dr. Seidel, despite his indication that she should return in one month, because she thought his office visits were expensive, he had prescribed Neurontin and pain patches, Plaintiff did not believe that a pain patch would be effective and Plaintiff believed there was negative news about Neurontin at that time.  (TR 212).

13

(TR 119).  The ALJ also noted that despite Plaintiff's history of bilateral carpal tunnel syndrome she had not undergone carpal tunnel release procedure.  (TR 22).

The ALJ's findings with respect to the weight given to Dr. Seidel's opinions are supported by substantial evidence.  The ALJ's decision that Dr. Seidel's opinions regarding Plaintiff's RFC are not entitled to "controlling" weight is supported by substantial evidence.  20 C.F.R. § 404.1527(d)(2).

**3.      *Whether Documents Submitted To The Appeals Council Are New and Material Evidence***

Plaintiff also argues that Dr. Price adopted Dr. Seidel's opinion.  Plaintiff refers to a Disability Parking Placard Application completed by Dr. Price dated February 20, 2007 and a memorandum by Dr. Price dated May 22, 2007.  (TR 183, 185).  Both documents were provided to the Appeals Council after the date of the ALJ's April 25, 2007 decision.  Dr. Price's May 22, 2007 memorandum post-dates the ALJ's decision.

The "court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the Secretary is supported by substantial evidence."  *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (*citing Richardson*, 402 U.S. at 401).  The court may still remand the case to the ALJ to consider this additional evidence but only upon a showing that the evidence is new and material and "that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  This is referred to as a "sentence six remand" under 42 U.S.C. § 405(g).  *See Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 549 (6th Cir. 2002).  The party seeking remand has the burden of showing that it is warranted.  *See Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).  "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for

14

inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357 (*citing Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984)).  "In order for the claimant to satisfy this burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711 (*citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)); *see also Cotton v. Sullivan*, 2 F.3d 692, (6th Cir. 1993) ("Where a party presents new evidence on appeal, this court can remand for further consideration of the evidence only where *the party seeking remand* shows that the new evidence is material.")(emphasis added)(citations omitted). "Evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial." *Wyatt*, 974 F.2d at 685 (*citing Sizemore*, 865 F.2d at 712).

With respect to the Disability Parking Application Placard, Plaintiff testified at the hearing that she had been approved for a handicapped parking sticker. (TR 191).  The application itself does not provide new or material evidence.  The fact of receiving the handicapped parking placard does not establish Plaintiff's disability under the Social Security Act.  On the application Dr. Price indicated that Plaintiff is unable to walk more than 200 feet without having to stop and rest.  (TR 183).  This is not new information and does not demand a more restrictive RFC than that set forth by the ALJ.  The ALJ opined that Plaintiff is limited to sedentary work.  (TR 183).  Plaintiff explained to the ALJ and in her reply brief that she did not have the application form at the time of the hearing because she had turned it in to the State of Michigan.  While presumably Plaintiff could have provided the ALJ with a copy of the application, this provides some explanation for not having provided the document prior to the ALJ's decision.  Therefore, although Plaintiff has shown good cause for the failure to submit the Disability Parking Placard Application to the ALJ, the Application does not constitute new or material evidence.

15

Plaintiff has not shown good cause for failing to produce this evidence, dated May 22, 2007, which references a May 2005 document. Plaintiff could have obtained Dr. Price's review of Dr. Seidel's 2005 opinion prior to the ALJ's April 25, 2007 decision. The second document submitted by Plaintiff is Dr. Price's May 22, 2007 memorandum in which he confirms that he authorized Plaintiff's "handicap/disability parking placard from the State of Michigan." (TR 185). As set forth above, the issue of the parking placard is neither new nor material. Plaintiff testified to this fact at the hearing and it is not inconsistent with the ALJ's finding that Plaintiff can perform a limited range of sedentary work. Dr. Price also states in his memorandum that he is "in agreement with Dr. Seidel's opinions and assessment regarding Janet's [Plaintiff's] impairments and abilities to function listed in the May 5, 2005 report [by Dr. Seidel]." (TR 185). Dr. Price's statement is not new or material medical evidence. Dr. Price is incorporating into his statement past medical evidence (he references a review of Plaintiff's chart) and a review of Dr. Seidel's May 5, 2005 questionnaire. *See generally Good Face v. Astrue*, 2008 WL 4861548 at *12 (D.S.D.2008) ("Where a treating physician never orders or suggests to the claimant that she avoid certain physical activities and never cautions the claimant that these activities could aggravate her health problems, the physician's opinion that the claimant cannot engage in these activities is not supported by medical evidence in the record.") (citations omitted).

Neither Dr. Price's May 22, 2007 memorandum nor the February 20, 2007 Disability Parking Placard Application constitute new and material evidence. Plaintiff has not shown good cause for failing to provide Dr. Price's memorandum to the ALJ. For these reasons, the Court should deny Plaintiff's request to remand this case for consideration of the documents which were submitted to the Appeals Council. *See* 42 U.S.C. § 405(g).

16

*4.*       *Whether The ALJ's Credibility Determination Is Supported By Substantial Evidence*

        Plaintiff argues that the ALJ's credibility findings are not supported by substantial evidence.

Plaintiff argues that the ALJ "did not specify what medical evidence discredited [Plaintiff's]

description of her pain and other symptoms or weigh that evidence against the rest of the evidence

of record." (Docket no. 10 at 12 of 17). Plaintiff also argues that the ALJ "incorrectly recalled what

activities [Plaintiff] could perform." (Docket no. 10 at 12 of 17).

        "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight

and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor

and credibility." *Walters,* 127 F.3d at 531. Credibility assessments are not insulated from judicial

review. Despite deference due, such a determination must nevertheless be supported by substantial

evidence. *Id.; see also* SSR 96-7p; 20 C.F.R. § 404.1529(c). Furthermore, to the extent that the ALJ

found that Plaintiff's statements are not substantiated by the objective medical evidence in the

record, the Regulations explicitly provide that "we will not reject your statements about the intensity

and persistence of your pain or other symptoms or about the effect your symptoms have on your

ability to work solely because the available objective medical evidence does not substantiate your

statements." 20 C.F.R. § 404.1529(c)(2). In addition to objective medical evidence, the ALJ must

consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of

claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and

side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than

medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations

and restrictions due to the pain. *See* 20 C.F.R. § 404.1529(c)(3); *see also Felisky v. Bowen*, 35 F.3d

1027, 1039-40 (6th Cir. 1994) (applying these factors).

        The ALJ considered the record in full and noted that Plaintiff shops and reads. (TR 150,

17

311).  At the hearing, Plaintiff testified that she reads two to four times per week for forty-five minutes and she shops for personal items.  (TR 193, 197).  In the October 26, 2004 Function Report Plaintiff reported that she showers, dresses, performs hygiene and self-care tasks, feeds and waters her cats and "scoops" their litter box, washes dishes, performs household finance tasks, watches television, reads, dusts and does the laundry including washing clothes, putting them in the dryer and folding them.  Plaintiff reported that she rests, lies down or sits between many of these activities.  (TR 61).  Plaintiff reported that her husband dumps the cat litter in the box for her and buys the cat food.  (TR 61).  He assists her with lifting items and reaching "up high."  Plaintiff reported difficulty lifting her arms to wash her hair and reaching her back or her feet.  (TR 62).  The record supports each of the ALJ's statements with respect to Plaintiff's daily activities and is consistent with the limited range of work which the ALJ has found that Plaintiff can perform.  The ALJ has limited Plaintiff to tasks which do not require reaching above shoulder height, power gripping or grasping.  He has also limited her to jobs which allow a sit/stand option after twenty minutes.  There is substantial evidence in both the October 2004 Function Report and the remainder of the record, including Plaintiff's testimony, that supports the ALJ's findings with respect to Plaintiff's daily activities.

The ALJ did not limit his credibility determination to Plaintiff's daily activities.  As set forth in the analysis above, the ALJ also pointed out the conservative nature of Plaintiff's treatments, including medication and physical therapy.  (TR 88).   Surgery has not been recommended and Plaintiff has not undergone carpal tunnel release.  Plaintiff testified that she has no side effects from her medication other than occasional constipation.  (TR 218A).  Finally, the ALJ considered Plaintiff's functional limitations due to her impairments, including the September 2003 emergency room records which showed Plaintiff to be "fully ambulatory" and able to bend over, the

18

accompanying CT scan, physical therapy treatment notes, an MRI from October 22, 2003, a total

body bone scan and x-rays from September 2004 and EMG testing from April 13, 2005.  (TR 93,

94, 118-19, 120-21, 146-47).  The ALJ concluded that Plaintiff can perform a restricted and limited

range of sedentary work.  (TR 21).

The ALJ accurately referenced Plaintiff's activities and other factors in the record in addition

to the objective medical evidence in his credibility determination. 20 C.F.R. § 404.1529(c)(3).  The

ALJ's finding that Plaintiff's allegations are not wholly credible is supported by substantial

evidence.

Plaintiff also argues that the ALJ failed to consider some of the objective evidence[3].  (TR

22).  Although the ALJ is not required to discuss every piece of evidence in the record, an ALJ

should discuss evidence that, if believed, could lead to a finding of disability.  In reviewing the

ALJ's decision, the Court must scrutinize the record in its entirety.  *See Randall v. Sullivan*, 956

F.2d 105, 109 (5th Cir. 1992).  The ALJ addressed each of the medical reports and notes which

contain the information Plaintiff alleges he failed to consider.  (TR 22).  Furthermore, Plaintiff has

failed to show that any of this evidence supports limitations greater than those found by the ALJ or

would otherwise lead to a finding of disability.

**4.      *Whether the ALJ's RFC Is Supported By Substantial Evidence***

Finally, Plaintiff argues that the ALJ's RFC is not supported by substantial evidence.  To the

extent Plaintiff bases this argument on Dr. Seidel's opinions, that issue is addressed above.  The ALJ

found that Plaintiff has the RFC to perform a "limited range of simple, routine work at the sedentary

---

[3]Plaintiff alleges that the ALJ failed to consider the April 13, 2005 EMG, the October 22, 2003
MRI of the lumbar spine and associated diagnoses of L5-S1 herniation and 60% sensory loss to
pinwheel and a noted atrophy of the right thigh with reduction of muscle mass.

19

level of physical exertion."[4]  (TR 20).  The ALJ found that Plaintiff can lift and/or carry up to ten

pounds occasionally, sit (with normal breaks) for six hours of an eight-hour workday, stand and/or

walk for two hours of an eight-hour work day, requires the ability to sit/stand at will after twenty

minutes, is limited to occasionally bending and stooping with no climbing stairs, kneeling, crouching

or crawling, no reaching above shoulder level, no power gripping or firm grasping with either upper

extremity and, although she occasionally uses a hand brace on the right hand, she is not limited in

simple grasping and fine manipulation.  (TR 20).  These limitations are more restrictive than the

limitations set forth by the state agency consultant.  (TR 131-38).  The limitations also address

Plaintiff's testimony that her husband assists her in lifting and that she avoids raising her arms above

shoulder height.

        In a hypothetical question posed to the VE, an ALJ is required to incorporate only those

limitations which he finds credible and supported by the record and the ALJ did so.  *See Casey v.*

*Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993).  The ALJ presented all of

the limitations of the RFC in his hypothetical question to the VE, with the additional limitation to

jobs entailing no more than simple, routine work.  The VE testified that although such an individual

could not perform Plaintiff's past relevant work, there are other jobs in the economy which such an

individual could perform.  The ALJ's RFC finding is supported by substantial evidence.  The ALJ's

finding at step five that there are significant numbers of jobs in the economy which Plaintiff can

perform is supported by substantial evidence.

_____

[4]Sedentary work is defined as work that "involves lifting no more than 10 pounds at a time and
occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a
sedentary job is defined as one which involves sitting, a certain amount of walking and standing
is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are
required occasionally and other sedentary criteria are met."  20 C.R.F. § 404.1567(a).

## VI.      CONCLUSION

The Commissioner's decision to deny benefits was within the range of discretion allowed by law, the ALJ's decision is supported by substantial evidence and there is insufficient evidence for the undersigned to find otherwise.  Accordingly, Defendant's Motion for Summary Judgment (docket no. 13) should be GRANTED, that of Plaintiff (docket no. 10, 16) DENIED and the instant complaint dismissed.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 24, 2009          s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE


## **PROOF OF SERVICE**

     I hereby certify that a copy of this Report and Recommendation was served upon  Counsel
of Record on this date.

Dated: August 24, 2009          s/ Lisa C. Bartlett
                                Courtroom Deputy